Robert L. Hill, Esq. (CBN 241624)
**LAW OFFICES OF ROBERT L. HILL, APC**
5055 Avenida Encinas, Suite 100
Carlsbad, CA 92008
Telephone: (760) 448-4425
Facsimile: (866) 579-5802
rhill@RLHfirm.com

Attorneys for Plaintiff Glenn Brown

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN BROWN, an individual; | Case No: **'22 CV 1692 TWR JLB** |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. **BREACH OF CONTRACT** |
| | 2. **CONVERSION** |
| BARKLEY RARITIES INC., a New York corporation, | 3. **FINANCIAL ELDER ABUSE** |
| | 4. **UNJUST ENRICHMENT** |
| | 5. **UNFAIR BUSINESS PRACTICES** [Cal. Bus. & Prof. §17200] |
| Defendants. | 6. **FALSE & DECEPTIVE ADVERTISING** [Cal. Bus. & Prof. §17500] |
| | 7. **FRAUD** |
| | 8. **NEGLIGENCE** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff GLENN BROWN alleges as follows:

## THE PARTIES

1. Plaintiff GLENN BROWN ("Plaintiff") is 66-years old and resides in the County of San Diego, California.

- 1 -
COMPLAINT

2. Defendant BARKLEY RARITIES INC. ("Defendant") is a corporation incorporated in the State of New York with its main office located at 1551 Montauk Hwy, Oakdale, New York 11769.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction) because the action is between citizens of different states and the amount in dispute exceeds $75,000.00.  Plaintiff is a citizen of California and Defendant is a citizen of New York.

4. The Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (internal quotations omitted).  Defendant operates a website (https://www.barkleyrarities.com) that promotes its services throughout the United States and, more specifically, to California residents like Plaintiff.  And, as detailed below, Defendant's employees and/or agents travelled to California for the transaction at issue in this litigation; upon information and belief Plaintiff alleges that Defendant's employees/agents met with other California residents during the same trip for the purpose of transacting similar business.  Accordingly, Plaintiff's claims arise out of Defendant's activities within California and Defendant purposefully directed its business activities toward California residents, including Plaintiff.

5. Venue is proper in this Judicial District because the events giving rise to this dispute occurred within this District. *28 U.S.C. §1391(b)(2)*.

## FACTUAL ALLEGATIONS

6. Prior to the events giving rise to this action, Plaintiff was the owner of a valuable collection of antique and unique coins, with an estimated value of approximately $640,000.00.

7. Defendant purports to be in the business of buying and selling rare coins.

8. In or about early February 2022, an agent purporting to work for Defendant cold-called Plaintiff. Defendant's employee/agent apparently knew that Plaintiff was a coin collector and said that he would be coming to California soon. The employee/agent asked whether he could come to Plaintiff's residence while he was in town to discuss a potential purchase of Plaintiff's coins.

9. Around this same time Plaintiff had been considering potentially selling his coin collection. As a result, Plaintiff agreed to allow Defendant's employee/agent to meet him at his home in California to allow Defendant to grade Plaintiff's coin collection. Plaintiff, however, did not agree to sell the coins. Instead, Plaintiff merely agreed that Defendant could grade the coins for purposes of making him an offer to purchase them and, depending on the offer amount, Plaintiff would then consider whether to sell his coins.

10. On February 18, 2022, two agents/employees of Defendant arrived at Plaintiff's residence in this Judicial District to meet with Plaintiff and pick up his coins, take them back to New York, and appraise them. Although the parties did not have a written contract, they had an agreement that Defendant would be taking the coins back to New York and that, depending upon the appraised amount, the parties would then discuss whether Plaintiff would be willing to either: (1) accept Defendant's appraised value and sell the coins to Defendant; or (2) decline the offer and have Defendant return the coins to him.

11. During the course of Plaintiff's meeting with Defendant's agents/employees, one of them made a comment about how they had just come from an "old lady's house" who was interested in having Defendant appraise her late-husband's coins. Defendant's agents/employees commented to the effect that this elderly widow was not knowledgeable about the value of her late-husband's coin collection, implying that Defendant's agents/employees could obtain the coins for less than their fair market value. Plaintiff was turned off by Defendant's cavalier willingness to exploit this fellow senior citizen and ended the conversation quickly,

requesting the agents/employees leave. The agents/employees did leave and returned to New York with Plaintiff's valuable coin collection.

12. When they left Plaintiff's home, Defendant's agents/employees provided Plaintiff with a check for $5,000.00, which Plaintiff understood to represent Defendant's good-faith deposit on any amount that Plaintiff ultimately would receive for the sale of his coins. Plaintiff, of course, knew he would have to return the $5,000.00 if the parties ultimately were not able to reach an agreement on a fair sale price. But at no point during this meeting did the parties have an agreement that Plaintiff was relinquishing ownership of the coin collection to Defendant. The only thing agreed upon was that Defendant could take possession of the coins for the purpose of appraising them and that the parties would then discuss next steps based on Defendant's appraised value, with Plaintiff reserving the right to request the collection be returned to him if the parties were unable to come to terms on an appropriate sale price after the appraisal had been completed.

13. On February 21, 2022, Defendant's employee "Matt" (who was one of the two people who had come to Plaintiff's residence) called Plaintiff and advised that Defendant believed Plaintiff's coin collection was worth $275,000.00. Plaintiff balked at this appraised value, telling Matt that Defendant "was not even in the same ballpark" as Plaintiff's desired value. As a result, Plaintiff requested his coins be returned to him and told Matt he would send back the $5,000.00 Defendant had given him when they had met. Matt responded by telling Plaintiff that he would try to "sweeten the deal" and would call Plaintiff back.

14. Plaintiff spent the next two weeks calling Defendant's office on a daily basis to request an update from Matt. Plaintiff was repeatedly told that Matt was out-of-the-office or otherwise unavailable to speak. During this time Plaintiff already was in discussions with the Better Business Bureau to lodge a complaint against Defendant. In this same timeframe Defendant wired $30,000.00 to Plaintiff. Plaintiff

never requested this wire transfer and did not understand what it represented. He kept trying unsuccessfully to reach Matt to ascertain what was going on.

15. Defendant's agent Matt finally returned Plaintiff's messages in early March. Matt told Plaintiff that Defendant was sending him coins to finalize the parties' "trade." Plaintiff did not understand what Matt was talking about. Plaintiff requested clarification whether Defendant was sending him back his coins, as Plaintiff had requested on February 21. Matt scoffed at Plaintiff's question, telling Plaintiff that Defendant was not sending back Plaintiff's coins **because Defendant already had sold them**. Plaintiff was stunned to hear this, as he had never agreed that Defendant could take ownership of his coins and sell them.

16. Soon thereafter Plaintiff received twelve coins in the mail from Defendant, along with an inventory of the coins – signed by Defendant's owner John Saccente – that Defendant requested Plaintiff sign and return to acknowledge their "trade." A copy of the inventory is attached as Exhibit A. Plaintiff never signed the form because he never agreed to accept these coins as part of any trade for his valuable coin collection.

17. Plaintiff never requested Defendant send him any coins other than his own coin collection, and he never agreed to accept Defendant's twelve coins as a "trade" for his coin collection. And, in addition to never consenting to this purported "trade," Plaintiff was never given fair value for his coin collection that he valued at $640,000.00. While Defendant has claimed the twelve coins Defendant sent Plaintiff are valued at $290,000.00, Plaintiff has taken them to multiple coin shops in San Diego County who have appraised the coins at a mere $10,000.00 - $11,000.00.

18. Since sending Plaintiff the coins, Defendant's representatives, including Mr. Saccente, have repeatedly tried to convince Plaintiff that he had previously agreed to "trade" his coin collection for the twelve coins mailed to him in early March plus the $35,000.00 he received through the initial $5,000.00 check and the $30,000.00 wire transfer. Plaintiff vehemently disputes he ever made any such

agreement with Defendant or any of Defendant's representatives. Plaintiff was clear from the outset that he merely authorized Defendant to take the coins to New York so Defendant could grade them and – after that process was complete – the parties would discuss the possibility of Defendant purchasing the coins. At no time did Plaintiff agree to any type of "trade," and Plaintiff obviously could not have accepted the twelve coins as part of any agreed-upon "trade" since he did not even know Defendant was sending him these coins until **after Defendant already had sold Plaintiff's coins without Plaintiff's knowledge or consent**.

19. Plaintiff alleges upon information and belief that Defendant intentionally preyed upon Plaintiff's vulnerability as a senior in committing the acts described herein. Defendant clearly believed it could steamroll and gaslight Plaintiff into thinking that he "must have" agreed that Defendant could take his coins, resell them behind his back, and accept Defendant's coins in their place. These deceptive acts are clearly part of Defendant's standard business practices, given that Defendant had started the entire scheme through a cold-call and Defendant's employees/agents had bragged about taking advantage of an elderly widow during the same business trip to California.

20. Plaintiff continuously refuted Defendant's false claims, first demanding that Defendant return his coin collection to him and, once Defendant disclosed it had already sold them, demanding Defendant provide him with compensation commensurate with the actual value of his collection.[1] Defendant repeatedly refused, even though Defendant's own website states that they offer a 14-day money-back guarantee on all deals and that all items can be returned for a full refund. *See Ex. B at pp. 2, 5.* As a result, this litigation is now necessary.

//

//

---

[1] Defendant has never told Plaintiff the amount it purportedly received in connection with the sale of Plaintiff's coin collection.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Contract

21. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

22. Plaintiff and Defendant had an oral agreement by which Defendant agreed to take possession (but not ownership) of Plaintiff's valuable coin collection for the purpose of grading the coins and that, depending upon the appraisal amount, the parties would then discuss whether Plaintiff would be willing to either: (1) accept Defendant's offer and sell the coins to Defendant; or (2) decline the offer and have Defendant return the coins to him.

23. Plaintiff complied with the parties' agreement. Defendant, however, breached the agreement by seizing ownership of Plaintiff's coins without Plaintiff's consent, selling the coins without Plaintiff's knowledge or consent, and sending Defendant money and coins that were not commensurate with the value of Plaintiff's coins.

24. Plaintiff has been harmed by Defendant's breach, in an amount in excess of $75,000.00 according to proof.

## SECOND CAUSE OF ACTION

### Conversion

25. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

26. Plaintiff was the rightful owner of a coin collection with an estimated value of $640,000.00. Defendant intentionally interfered with Plaintiff's ownership rights by wrongly taking possession of Plaintiff's coin collection, selling the coins without Plaintiff's knowledge or consent, and keeping the entire sale proceeds for itself.

27.     Plaintiff has been harmed by Defendant's wrongful possession of the coin collection, in an amount in excess of $75,000.00 according to proof.

### THIRD CAUSE OF ACTION

### Financial Elder Abuse - Cal. Welf. & Inst. Code §§ 15600, et seq.

28.     Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

29.     Plaintiff is an "elder" as defined in California Welfare and Institutions Code §15610.27.  By engaging in the conduct described herein, Defendant took, secreted, appropriated, obtained, and/or retained Plaintiff's personal property – in the form of his valuable coin collection for which he was extremely proud of – for a wrongful use and/or with an intent to defraud in violation of the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act").  *Cal. Welf. & Inst. Code §15610.30(a)*.     Defendant intentionally preyed on Plaintiff's sensibilities by promising Plaintiff it would appraise the coin collection before discussing a potential business transaction when, in actuality, Defendant always knew it was going to immediately seize possession of the precious coins and falsely claim Plaintiff agreed to some sort of "deal" that he never actually agreed to.  Defendant knew or should have known its conduct was likely to harm Plaintiff, creating a presumption its conduct was committed for a wrongful use. *Cal. Welf. & Inst. Code §15610.30(b).*

30.     Plaintiff was harmed by Defendant's conduct, in an amount according to proof.

31.     Defendant acted with recklessness, malice, fraud, and oppression in committing the acts alleged herein, thereby entitling Plaintiffs to punitive damages. Additionally, the limitations on compensatory damages imposed by Section 377.34 of the Code of Civil Procedure do not apply. *See Cal. Welf. & Inst. Code §15657.5*.

32.     Plaintiff further demands recovery of his actual attorney's fees, costs, and expenses incurred in connection with this action.  *Cal. Welf. & Inst. Code*

*§15657.5(a)* (where a defendant is found liable for financial elder abuse, the court "shall award to the plaintiff reasonable attorney's fees and costs.").

33. Plaintiff further requests the Court award treble damages because Defendant's conduct, as alleged herein, satisfies the following statutory factors set forth in California Civil Code §3345(b): (1) Defendant knew or should have known that its conduct was directed to one or more senior citizens; (b) Defendant's conduct caused one or more senior citizens to suffer the loss of a source of income, substantial loss of property set aside for retirement and/or personal or family care and maintenance, substantial loss of payments received under a pension or retirement plan or a government benefits program, and/or assets essential to the health or welfare of the senior citizen or disabled person; and (c) senior citizens like Plaintiff was and are substantially more vulnerable than other members of the public to the Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and senior citizens actually suffered substantial physical, emotional, or economic damage resulting from the Defendant's conduct.

34. Plaintiff further requests the Court award double damages pursuant to California Probate Code §859 because Defendant acted in bad faith and through undue influence by wrongfully taking, concealing, and disposing of Plaintiff's property.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

35. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

36. Defendant has been unjustly enriched by stealing Plaintiff's valuable coin collection without providing fair value in return.

37. In order to protect and preserve Plaintiff's rights, Plaintiff demands that a constructive trust be imposed for his benefit in an amount according to proof for the full amount owed to Plaintiff, plus interest, attorney's fees, and costs.

# FIFTH CAUSE OF ACTION

## Unlawful, Unfair, & Fraudulent Business Practices [Cal. Bus. & Prof. Code §17200]

38. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

39. California's Unfair Competition Law ("the UCL") provides that any "unlawful, unfair or fraudulent business act or practice" shall be deemed "unfair competition." *Cal. Bus. & Prof. Code. §17200*. Private plaintiffs may seek injunctive relief and restitution against businesses or persons who violate the UCL. *See, e.g., Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179, 973 P.2d 527, 539 (1999); *Amer. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 632 (9th Cir. 2018).

40. Defendant engaged in unfair, unlawful, and fraudulent business practices through the conduct described herein. Defendant falsely represented it would take possession of Plaintiff's valuable collection solely to appraise the coins when Defendant ultimately converted the coin collection for its own use and did not provide Plaintiff adequate or agreed-upon compensation in return for his precious heirlooms. Defendant also acted contrary to the explicit representations on its website. Plaintiff believes, and thereon alleges, that Defendant has engaged in similar unfair, unlawful, and fraudulent business practices with other California residents.

41. As a result of Defendant's violations of the UCL, Plaintiff is entitled to restitution equal to his losses incurred in connection thereof and injunctive relief.

42. Plaintiff is further entitled to recover his attorney's fees under California's "private attorney general doctrine," codified at California Code of Civil Procedure §1021.5, because Plaintiff's UCL claim will confer a significant benefit on the general public or a large class of persons, the necessity and financial burden of

private enforcement are such as to make the award appropriate, and such fees should not in the interest of justice be paid out of the recovery, if any.

## SIXTH CAUSE OF ACTION
## False Advertising [Cal. Bus. & Prof. Code §17500]

43. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

44. California's False Advertising Law ("the FAL") makes it unlawful for any business to make any statement, including over the Internet, concerning its services that is untrue or misleading and that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. *Cal. Bus. & Prof. Code. §17500*. Private plaintiffs may seek injunctive relief and restitution against businesses or persons who violate the FAL. *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).

45. Defendant's website contains a number of statements about Defendant's services and business practices that Defendant knew, or reasonably should have known, were untrue and misleading. The website claimed that "100% Customer Satisfaction is our most important goal" and that the company offered a 14-day money back guarantee on all transactions. *Ex. B, pp. 2, 5*. Defendant's website further stated that "[a]ll items may be returned for any reason for a full refund of the purchase price." *Ex. B, p. 5*. In reality, Defendant did not care whatsoever about Plaintiff's lack of satisfaction, falsely representing it was taking Plaintiff's coin collection for the limited purpose of appraising the valuables when Defendant always intended to immediately sell the coins. Defendant also did not honor its promised 14-day money back guarantee, instead repeatedly claiming that it had a binding "deal" with Plaintiff (when in reality it never did) and refusing to return Plaintiff's coin collection or otherwise engage in any type of discussion about how to fairly unwind the transaction.

- 11 -
COMPLAINT

46. As a result of Defendant's violations of the FAL, Plaintiff is entitled to restitution equal to his losses incurred in connection thereof and injunctive relief.

47. Plaintiff is further entitled to recover his attorney's fees under California's "private attorney general doctrine," codified at California Code of Civil Procedure §1021.5, because Plaintiff's FAL claim will confer a significant benefit on the general public or a large class of persons, the necessity and financial burden of private enforcement are such as to make the award appropriate, and such fees should not in the interest of justice be paid out of the recovery, if any.

## SEVENTH CAUSE OF ACTION

## Intentional Misrepresentation and Concealment

48. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

49. As alleged herein, Defendant's agents/employees falsely represented Defendant would only take possession of Plaintiff's coin collection for the purpose of appraising the coins before discussing an adequate financial arrangement with Plaintiff for the potential sale of the valuables.  In reality Defendant always intended to seize ownership of Plaintiff's valuable coin collection, immediately sell the coins without Plaintiff's knowledge or consent, and provide Plaintiff with compensation that was not commensurate with the value of his property.

50. Defendant engaged in the misrepresentations and concealment with the intent to steal Plaintiff's property.  Plaintiff justifiably relied upon the misrepresentations and concealed facts in turning over possession of the coins to Defendant, thereby allowing Defendant to wrongfully convert the valuables to its control and to Plaintiff's detriment.

51. Defendant acted with recklessness, malice, fraud, and oppression in committing the acts alleged herein, thereby entitling Plaintiff to punitive damages.

## EIGHTH CAUSE OF ACTION

### Negligence

52. Plaintiff realleges and incorporates by reference all paragraphs above and below as if fully set forth herein.

53. Defendant owed Plaintiff a duty to act with reasonable care in connection with the parties' proposed business dealings and transaction.

54. Defendant breached its duty by engaging in the actions alleged herein. Defendant's breach resulted in damage to Plaintiff, in an amount according to proof.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as provided by Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. Compensatory damages in an amount according to proof;

B. Attorney's fees, costs, and expenses incurred in connection with pursuing this dispute, pursuant to Cal. Welf. & Inst. Code §15657.5(a) and California Code of Civil Procedure §1021.5;

C. Treble damages pursuant to California Civil Code §3345;

D. Double damages pursuant to California Probate Code §859;

E. Punitive damages;

F. A constructive trust be imposed for Plaintiff's benefit for the full amount owed, including interest, attorney's fees, and costs;

G. Restitution and injunctive relief under California's Unfair Competition Law and California's False Advertising Law;

H. Pre-judgment and post-judgment interest at the legal rate; and

I. Such other and further relief as the Court deems just and proper.

| | |
|---|---|
| DATED: October 31, 2022 | Submitted by, |
| | LAW OFFICES OF ROBERT L. HILL, APC |
| | |
| |         s/ Robert Hill |
| | ROBERT L. HILL |
| | 5055 Avenida Encinas, Suite 100 |
| | Carlsbad, CA 92008 |
| | Telephone: (760) 448-4425 |
| | Facsimile: (866) 579-5802 |
| | rhill@RLHfirm.com |
| | *Attorneys for Plaintiff Glenn Brown* |